**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND**

Civil Action No. 19-41-HRW

**STATE FARM FIRE AND CASUALTY CO.,**                       **PLAINTIFF,**

v.                **MEMORANDUM OPINION AND ORDER**

**COMPLIANCE ADVANTAGE, LLC,** *et al.***,**                   **DEFENDANTS.**

This matter is before the Court upon State Farm's Motion for Declaratory Judgment [Docket No. 14]. The matter has been fully briefed by the parties. For the reasons set forth herein, the Court finds that based upon the professional services exclusion in the relevant insurance policy, State Farm has no duty to defend or indemnify Compliance Advantage in the civil lawsuit filed against it by Heather Criswell and Paula Maddox.

**I.**

Compliance Advantage, LLC, d/b/a C.A.L. Laboratory Services and Reliable Lab provides laboratory testing services, including blood and urine testing, to various businesses, including addiction counseling centers.

Heather Criswell and Paula Maddox filed a civil action against Compliance Advantage in Boyd Circuit Court for reporting false laboratory results which they allege resulted in economic

1

as well as emotional damages. *Criswell, et al. v. Compliance Advantage, et al.*, Boyd Circuit Court Case No. 17-CI-296. A copy of their Complaint is in the record at Docket No. 14-2.[1]

Maddox, operated Counselor's Cottage, an addiction counseling agency that utilized Compliance Advantage's laboratory services. She alleges that false laboratory reports, false testing, and false reported results caused her and her contractor physicians and employees to lose business and in many cases their occupation. [Docket No. 14-2].

Heather Criswell was a patient of the Counselor's Cottage and alleged that Compliance Advantage falsely and negligently reported false laboratory results which, when reported to proper governmental channels, caused the removal of her child from her custody. *Id.*

Their Complaint seeks compensatory damages as well as attorneys' fees. *Id.*

At all times pertinent to this civil action, Compliance Advantage had a business insurance policy with State Farm. [Certified Copy of Policy. No. 97-BT-D2285, Docket No. 14-3]. Pursuant to the policy, State Farm is providing Compliance Advantage with a defense under a reservation of rights in the Boyd County action.

State Farm filed this action pursuant to 28 U.S.C. § 2201 seeking a declaratory judgment as to its duties to defend and indemnify Compliance Advantage in the Boyd County action.

State Farm argues that the professional services exclusion in the aforementioned policy applies to all claims alleged in the Boyd County action and it is, therefore, not obliged to defend or indemnify Compliance Advantage.

---

[1] Maddox and Criswell purport to represent similarly situated individuals and entities. Although the Boyd Circuit Court certified the class, Court of Appeals reversed the decision and remanded the matter to Boyd Circuit Court for further proceedings.

2

## II.

Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).[2] While the Act authorizes district courts to exercise jurisdiction, it does not mandate or impose a duty to do so. *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004). The Act confers on the "federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

This court considers five factors (the "*Grand Trunk* factors") to determine whether the exercise of Declaratory Judgment Act jurisdiction is appropriate. *Grand Trunk W.R.R. Co. v.Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984) (internal quotation marks omitted). The Court must balance the five factors and "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *Id.* at 563; *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).

The first two *Grand Trunk* factors assess "(1) whether the declaratory action would settle the controversy" and "(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. Because "it is almost always the case that if a declaratory judgment will settle the controversy, ... it will clarify the legal relations in issue," the inquiries required by these two factors often overlap substantially. *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019) (*citing Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008). In this case, a declaratory judgment would resolve the issue of indemnity which is not being litigated in the Boyd County action and clarify the legal relations between State Farm and its insured. Therefore, these two factors support this Court's exercise of

3

jurisdiction.

The third factor considers "whether the use of the declaratory judgment action is motivated by 'procedural fencing' or [is] likely to create a race for res judicata." *Flowers*, 513 F.3d at 558. The Sixth Circuit seldom finds procedural fencing if the declaratory-plaintiff filed after the start of litigation in state court. *Cole's Place*, 936 F.3d at 399. "[W]hen the plaintiff has filed his claim after the state court litigation has begun, [the Sixth Circuit] ha[s] generally given the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of [the] action.' " *Id.* (fourth alteration in original) (quoting *Bituminous*, 373 F.3d at 814). State Farm filed the instant action well after the Boyd County litigation started. Therefore, this factor supports jurisdiction.

The fourth *Grand Trunk* factor addresses "whether accepting jurisdiction would increase friction between federal and state courts" and is broken into three sub-factors. *Flowers*, 513 F.3d at 559. The first sub-part "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. Any factual determinations the Court may have to make about coverage will not overlap with those at issue in the Kentucky suit. The first sub-factor therefore supports jurisdiction.

The second sub-part examines "which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Id.* The Sixth Circuit has "found that 'issues of insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve.' " *Id.* (quoting *Travelers Indemnity Co. v. Bowling Green Prof. Assoc.*, 495 F.3d 266, 273 (6th Cir. 2007)). This factor weighs against federal jurisdiction.

The third sub-part "focuses on whether the issue in this federal action implicates important

state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. Kentucky state courts are "more familiar and, therefore, better able to resolve" interpretation of insurance contracts. *Id.* Even when the state law is not difficult to apply, the Sixth Circuit has usually found "that the interpretation of insurance contracts is closely entwined with state public policy." *Cole's Place*, 936 F.3d at 400 (*citing Travelers*, 495 F.3d at 273). Because this action involves an interpretation of a Kentucky insurance contract, the third sub-factor could be said to argue against jurisdiction.

The fifth and final factor asks "whether there is an alternative remedy which is better or more effective" than federal declaratory relief. *Grand Trunk*, 746 F.2d at 326. Kentucky law provides a declaration of rights procedure, under KRS § 418.040. *Mass. Bay Ins. Co. v. Christian Funeral Dirs.,* 759 Fed.Appx. 431, 441-42 (6th Cir. 2018). However, given that Kentucky precedent provides clear guidance as to the resolution of the legal issue presented, it cannot be said that the district court [is] a clearly inferior forum to resolve the issue" in this case. *Id.* Moreover, State Farm would have needed to join the underlying state action and then wait until a resolution of liability before determining its obligations toward Compliance Advantage. "Such a delayed alternative would be worse, not better, than seeking a federal declaratory judgment." *Id.* When faced with the same conflicting alternative remedies in *Flowers*, the Sixth Circuit held that this factor "counsel[s] against exercising jurisdiction ... [h]owever, it does not counsel so strongly against exercising jurisdiction that" exercising jurisdiction would constitute an "abuse[ ] [of] discretion." *Id.* at 562–63. For these reasons, overall, the fifth *Grand Trunk* factor appears to be neutral.

As noted above, the Sixth Circuit has never suggested the relative weight of the factors; instead, "[t]he relative weight of the underlying considerations of efficiency, fairness, and

5

federalism will depend on facts of the case." *Cole's Place*, 936 F.3d at 396 (*citing Hoey*, 773 F.3d at 759). Further, "[t]he essential question is always whether [the court] has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair." *Id.* (citation omitted). Having evaluated those factors, the first two factors support exercising jurisdiction, as does at least one of the sub-factors of the third factor. The Court finds that exercise of discretionary jurisdiction is appropriate.

**III.**

Kentucky law governs the interpretation of the insurance contract between State Farm and Compliance Advantage. *Flowers*, 513 F.3d at 563. In Kentucky, whether a provision of an insurance policy requires the insurer to defend its insured is an issue of law for the Court to determine. *See generally, Kemper Nat. Ins. Cos. v. Heaven Hill Distilleries, Inc.,* 82 S.W.3d 869, 871 (Ky.2002). Where the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written. *Id.* at 873. Because coverage exclusions are contrary to the fundamental protective purpose of insurance, they are strictly construed against the insurer and will not be extended beyond their clear and unequivocal meaning. *Id.* However, strict construction of policy exclusions should not overcome plain, clear language resulting in a strained or forced construction. *Id.*

**IV.**

State Farm argues that the "Professional Services or Treatment" exclusion in the subject policy applies to the claims asserted by Criswell and Maddox and, therefore, it is relieved from any duty to defend or indemnify Compliance Advantage with regard to those claims.

The exclusion, which excludes liability for bodily injury, property damage and personal and advertising injury, provides:

6

> "**Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional service or treatment.** This includes but is not limited to:
>
> ….
>
> **c.** Supervisory, inspection, architectural or engineering activities;
> **d.** Treatment, advice or instruction of any medical, surgical, dental, x-ray or nursing services;
> **e.** Treatment, advice or instruction of any health or therapeutic services.
>
> ….
>
> **This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.**

[Docket No. 14-2, Section II](emphasis added).

This exclusion is intended to apply to services involving "any professional training or experience" or the "exercise of professional judgment." *Ratliff v. The Employers Liability Assur. Corp. Ltd.*, 515 S.W.2d 225, 229 (Ky. App. 1974).

State Farms contends that the claims asserted by Criswell and Maddox **arose out of** the professional services rendered by Compliance Advantage, to-wit, the taking and conducting lab tests on blood and urine samples and providing the results to its customers, in this case, Counselor's Cottage. Indeed, the claims appear to fall squarely into the language of the exclusion: the process, beginning with the taking of the samples, and ending with forwarding the results to the patients of Counselor's Cottage, is "treatment, advice or instruction of any medical, surgical, dental, x-ray or nursing services," conducted by medical professionals as well other employees, who were "hir[ed], train[ed] or monitor[ed]" by Compliance Advantage and

7

were involved in the "rendering" or, as alleged in this case, the " failure to render, of any professional service."

Moreover, State Farm points out that in their responses to written discovery, Criswell and Maddox specifically contend that Compliance Advantage breached its "professional duty of care," which appears to summon the language of the exclusion.

Notably, Criswell and Maddox do not dispute the validity of the professional services exclusion under Kentucky law. Nor do they dispute that their claims against the medical professionals for malpractice fall within the purview of exclusion. Instead, they maintain that if the errors resulted from negligence at the hands of incompetent staff, equipment malfunction or some other "ministerial conduct" during the process, the professional services exclusion does not apply. In support of their argument, they present an affidavit from a former Compliance Advantage employee, Cynthia Carr. [Docket No. 15-1]. Ms. Carr states that the errors committed by Compliance Advantage were not intentional and suggests that erroneous data input, equipment malfunction and incompetent staff may be the cause.

Yet, State Farm is not arguing that an intentional acts exclusion bars coverage; rather, it contends that the errors, whether intentional or negligent, whether committed by a doctor or a lab tech, fall within the professional services exclusion in its policy. The Court agrees.

While this specific scenario has not been presented to a Kentucky court, the application of the professional services exclusion is consistent with Kentucky's expansive reading of "arose out of" in insurance policies. *See generally*, *Hugenberg v. West American Insurance Company*, 249 S.W.3d 174 (Ky. App. 2006). The Kentucky Court of Appeals has consistently ruled that the phrase "arising out of" should be "construed expansively" to mean "originating from," "having its origin in," "growing out of," or "flowing from," and that all that is required is some

"causal connection." *Id.* at 186. The Sixth Circuit in applying Kentucky law likewise noted that courts have given the phrase "arising out of" "broad application" when interpreting comprehensive general liability policies such as the business policy issued by State Farm. *Capital Specialty Insurance v. Industrial Electronics, LLC,* 2011 WL 96521 (6th Cir. 2011).

Following this construction, even if the failures of Compliance Advantage were due to equipment malfunction or incompetent staff, these were an integral part of the overall professional service provided by Compliance Advantage, "originating from," "flowing from," "connected to," the same. Indeed, the so-called ministerial acts are a required component in producing and communicating the lab results. Therefore, the claims asserted against Compliance Advantage are excluded from coverage.

V.

The plaintiffs in the underlying Boyd Circuit Court action contend that Compliance Advantage intentionally or negligently reported false lab results causing them compensatory and punitive damages. All of their claims therefore arose out of Compliance Advantage providing the professional services of taking, performing and reporting laboratory results of blood and urine samples. The professional services exclusion therefore precludes liability coverage under State Farm's business policy for all claims asserted by Criswell and Maddox. Absent coverage, State Farm has no duty to defend or indemnify Compliance Advantage as a matter of law.

Accordingly, **IT IS HEREBY ORDERED** that State Farm's Motion for Declaratory Judgment [Docket No. 14] be **SUSTAINED.**

This 7th day of July, 2020.



**Signed By:**
*Henry R Wilhoit Jr.*
**United States District Judge**

9